We have one last case today, and it's Appeal No. 22-1455, Corphotonics v. Apple. It has a number of the same issues in it as the case we just heard. And we do not want to rehear argument on those issues. So please just refrain, limit your arguments to those new issues that are in this last appeal. Thank you. Thank you, Your Honor, and may it please the Court, once again, Brian Liddell for Corphotonics. I think with that direction, I'll keep this pretty brief because the only unique issue to this second appeal is really the last issue in the briefing about whether the Togo reference actually is properly relied on to teach the effective resolution as a no-switching criteria that the claims require. We submit there's a couple of different errors that the Board made here. The first is a claim construction error that basically the Board ignored pretty clear definitional language in the specification that required that the effective resolution was that those references in the claims refer to an effective resolution score, not some hazy or uncertain concept of maybe it's fuzzy in some way. And that's basically something that you can find both by seeing how the specification describes this, including listing that definition in a section called Definitions in the specification. But also when you look at the claim language, the claims specifically contemplate that you make these switches based on whether one is lower than the other, whether the effective resolution of one is lower than the effective resolution of the other. Isn't the definition a definition of effective resolution score and not just effective resolution? The language in that column in the specification in column 6 does refer to effective resolution score. That's what it's defining there, isn't it? It is, and everywhere that the patent talks about using effective resolution, that's what it's talking about using. Well, you say that, but there's no definition provided at least expressly of just effective resolution. It's true. The specification never says effective resolution equals effective resolution score in HEC-VRBA. That is not something that it says. It never defines effective resolution separately. It only ever talks about using an effective resolution score. And when it talks about the embodiments, it talks about using that score just as the claims do and recognizing whether that score is higher or lower for one of the two images and using that as the criteria in which you might determine to switch or not to switch the output. What can you point to in the claims or elsewhere in the patent that would cause us to limit the scope of the claims to just the score? I think the most important feature is the claims' references to using a term like lower to describe when you switch or when you don't switch in this case, when you have the non-switching criteria. That when the effective resolution of one is lower than the other, that's talking about making a measurement comparison that this one is lower than that one. Your suggestion is that lower implies that there has to be a number assigned to it. Right. The lower is the lower score, not some lower aesthetic component that's ill-defined and can't be measured in some way. I can say that the number three is lower than the number five, for example, if they were scores. I can't say that prettier is lower than really pretty. Those are not going to be quantitative measures from which one could choose to implement this kind of automated non-switching criteria that the patent describes. But if that's true, why didn't the patentee just say efficient resolution score or effective resolution score in the claim? I think it's a shorthand for the same thing, is the simple answer, Your Honor. So you're suggesting that we should understand the specification to say these are synonyms. Yes. Even though it uses different words. That's correct. But even putting aside the construction, Togo doesn't actually, so if we were to accept, and I would say, the board's construction here is not exceptionally clear as to what it's using as the definition of effective resolution. But Togo, the reference that it relies on for this purpose, and the only reference that's purported to teach this, doesn't actually teach using blurriness or sharpness, which are the criteria the board talks about as non-switching criteria. It just uses two things, magnification and distance, imaging distance from an object. Those are not measures of sharpness or blurriness. This is where, so Togo, at paragraph 18 of the reference, which is at page 5682 of the appendix, and at paragraphs 49 to 50 of the reference, which is page 5685, it's only talking about making its no-switch determination based on those two parameters, magnification and distance. What about the language in Togo talking about a telephoto imaging module being less sharp at close distances? So thus implying that by making shifts at distances, it's implicitly doing it based on resolution. So I think that's a step too far in terms of drawing a few too many inferences. Essentially what I think that argument boils down to is the reference doesn't exclude using sharpness or blurriness. It's using something different, but I don't think it's a proxy. That would be the argument, but I don't think there's enough proxy there to suggest that simply saying how far away it is, the reference notes that sometimes the distance can affect that. But it doesn't really say that it's using the distance as a proxy for sharpness or blurriness. It appears to be using distance simply because it's a convenient and easily measurable system that the reference talked about. It doesn't talk about measuring sharpness or blurriness. It doesn't talk about looking to see if in fact the distance does or does not affect sharpness or blurriness. So under Togo's criteria, it's entirely possible that you could have the no-switching based on the distance, even though the one you were keeping had a lower effective resolution than the one you weren't keeping. Togo's not really consistent with doing what the patent says. The fact that maybe on occasion it might end up with the same answer is not the same as teaching using sharpness or blurriness as your criteria. Why was the board not entitled to rely on Dr. Duran's opinion? So I think here, first of all, obviously, as I said, the core of that is, as we said, the claim construction issue. But also I think because they don't address, obviously, under what we believe to be the correct construction, Dr. Duran doesn't provide an opinion to support that. But putting that aside, I don't think that simply it's not sufficient for an expert to say, well, this thing which Togo concedes is different and could sometimes correlate to effective resolution under this very vague concept of that, that that's sufficient. I don't think that the board can simply credit expert testimony of that type when the reference clearly says something different. That's taking the substantial evidence a step too far. I'm happy to answer other questions about this, or if the court had other questions about any of the other issues, I'm happy to address them. But this is obviously a pretty discreet piece. All right. Thank you very much. OK. Ms. Leach, whenever you're ready. Did you go by Boyd Leach or Leach? It's just Leach. It's fine. Thank you. Good morning. May it please the court. My name is Erin Leach, and I represent Apple Incorporated. Your Honor, as we recognize that the court has already heard issue on the analogous art, has already heard argument on the analogous art issue in the 1340 and 1341 consolidated appeal. So I will not raise new arguments. But to the extent that the court has open questions or their concerns were not addressed by the previous argument, I would invite questions if the court sees fit. Otherwise, I'll move on to the effective resolution limitation. So on the effective resolution claim construction issue, the board properly rejected Core Photonics' attempt to read the term score from the specification into the claims. As the board explained, there was no lexicography and there was no disclaimer to justify doing so. Both the intrinsic and the extrinsic evidence shows that the patents treat effective resolution and effective resolution score differently. With respect to the intrinsic evidence, if the court wants to turn to the 898 patent, I have a few citations here that could help the court. At Appendix 159, at the bottom of Column 4, it states, in some exemplary embodiments, the no-switching criterion includes effective resolution of the tele-image being lower than an effective resolution of the wide image. And then if you turn over to 160. If we could pause there, how can that be? As your friend on the other side suggested, two is lower than three, but how is one image lower than the other? Yes, Your Honor. We would disagree that lower implies that you have to have a quantitative number. You could look at an image using your eyes and qualitatively tell whether the image quality or the effective resolution is higher or lower from one picture to another. Now that could be converted to a number, presumably, right? Of course, Your Honor. There are a number of ways to determine effective resolution. Some of them would be calculating the effective resolution score. The board also talked about the Jacobson reference, which talks about determining a resolution by resolving power. There's also the spatial frequency way of determining effective resolution. And Togo teaches when the object is close to the camera, well then, in that case, the effective resolution of the tele would be, or the image quality of the tele would be, superior to the wide. And so, if you turn over to 162, appendix 162, however, at lines 10, 15 through 19, Which column? Column 10. Thank you. It says the effective resolution score of the tele image is lower than that of the wide image. And so, there are two options here. Core photonics could have claimed that of the one in column 4, or that of 10, they chose only the former. And so, we believe that there is no equality between effective resolution and effective resolution score. Those are just two options. The next is at appendix 160, at column 6, lines 16 through 18. And that's actually the definition of the effective resolution score. And what the board said was that, well, sorry, inside of that definition, it talks about the effective resolution score can be derived from a combination of the sharpness scores and the edge scores. So, sharpness is a feature of the effective resolution. And it also says that the effective resolution score provides a good indication of the effective resolution level in the image. So, the effective resolution score is just a good indication of the effective resolution, but not the effective resolution itself. And finally, I just want to point the court to figure 4, which is at appendix 157. And what this figure, the important takeaway from this figure is that you have effective resolution that is changing, is dependent on the zoom factor. So, this is not the effective resolution score. This is sort of a qualitative assessment of how effective resolution can change when the zoom factor increases. So, with the extrinsic evidence, it tells a similar story. I think Judge Stoll mentioned our expert's testimony. And he, at appendix 6321, he said that a faceta would not understand the meaning of effective resolution to include or necessarily mean effective resolution score. Core Photonics' own expert, at appendix 6753, said that the effective resolution score is just a measurement of the effective resolution, not the effective resolution itself. And, final point regarding the total reference and whether it teaches the limitation. Substantial evidence supports the board's finding that the total reference does teach the effective resolution limitation. Dr. Duran's testimony that Togo teaches comparing the image quality of the wide and the tele images is at appendix page 5511. Go ahead. I was just going to ask you, how do you respond to the argument that the board erred in relying on Mr. Duran's testimony because it's inconsistent with Togo itself? Are you referring to the claim 6, claim 4? I'm just referring to the argument that was made here today that I heard, and I just wanted to see what your response was to that. I don't understand at all that Dr. Duran's testimony is inconsistent with the reference. So, we would simply disagree with the argument. We think that it's entirely consistent. He says that, he explained that Togo teaches that the tele image is less sharp than the wide image when the object is close. And most importantly, perhaps, Togo specifically states that image qualities of the wide angle image 20 and the telephoto image 21 at long distance B are compared. So, and that's at appendix 5686, paragraph 67. So, Togo indisputably teaches comparing image qualities. And so, that's all I have, your honors. Does the board rely on Dr. Duran for what Togo discloses? Yes, so it's a little bit indirect, but it is in the opinion, your honor. At 57? Appendix 57. So, at the beginning of the first full paragraph, he talks about what, the board talks about what petitioner relied on. And there are a number of citations there from Togo and also from the petition. And then, also at the bottom of that paragraph, it talks about paragraph, pages 55 through 57 of the petition. And in that portion of the petition, which includes much of what is above this sentence, it includes Dr. Duran's testimony. So, we can infer from that that the board was crediting Dr. Duran? Yes, so that's exactly what the inference would be, citing the petition. And then, in that section of the petition, it's focused on Dr. Duran's testimony. So, if there are no further questions, we thank the court for its time. And we ask that you affirm the board's final written decision. Thank you. Thank you. Do you have some rebuttal time if you wish to use it? I don't think I will use very much of it. But I did want to just comment on one point in particular that my friend made regarding the claim construction issue. There was a discussion of disclosure at Column 4 somehow being an embodiment that used effective resolution but not an effective resolution score and contrasting that with Column 10. I don't think that's a fair characterization of the patent. The reference at Column 4 is part of the summary discussion. It's a shorthanded summary, obviously, of the invention. It's not a description. It's not part of the detailed description of the embodiments. When that same embodiment is discussed is in Column 10 where it's discussed using an effective resolution score, not some vague concept of effective resolution. So, I don't think that suggesting that those two passages exist somehow suggests that the board's claim construction is correct. I'm happy to answer other questions. Thank you very much. No penalty for brevity. The case will be submitted. We thank the parties for all of the arguments today. And that will be it for today. Thank you.